2018OS151



IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
PULASKI COUNTY, ILLINOIS

| | |
|---|---|
| ENVIRONMENTAL REMEDIATION AND RECOVERY, INC., <br><br> Plaintiff, <br><br> v. <br><br> CAPITAL RAILROAD CONTRACTING, INC. <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No.: 2018L10 <br> ) <br> ) <br> ) <br> ) |

## SUMMONS

To the Defendant: CAPITAL RAILROAD CONTRACTING, INC. c/o Aaron Vollrath, Registered Agent
8500 E. Trade Center Drive, Columbia, MO 65201

YOU ARE SUMMONED and required to file an answer in this case, or otherwise file your appearance, in the office of the clerk of this court: Pulaski County Courthouse, 500 Illinois Avenue, Mound City, ILLINOIS, within 30 days after service of this summons, not counting the day of service. IF YOU FAIL TO DO SO, A JUDGMENT OR DECREE BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT.

To the Officer:

This summons must be returned by the officer or other persons to whom it was given for service, with indorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so indorsed. This summons may not be served later than 30 days after its date.

WITNESS 7/30/2018, 20____.

(Seal of Court) /s/ Katie Gibson
(Clerk of the Circuit Court)

(Plaintiff's attorney or Plaintiff if not represented by an attorney.)

Name: Mark S. Johnson
Attorney for: Plaintiff
Address: 212 North Main St.
City: Cape Girardeau, MO 63701
Telephone: 573-335-3300

Date of service: 08-23, 2018
(To be inserted by officer on copy left with Defendant or other person)

RECEIVED

AUG 03 2018

BOONE COUNTY
SHERIFF'S DEPT.

Rec 8-20

FILED
Pulaski Co. Circuit Court
1st Judicial Circuit
Date: 7/30/2018 3:29 PM
Lisa Jones

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
PULASKI COUNTY, ILLINOIS

| | |
|---|---|
| ENVIRONMENTAL REMEDIATION AND RECOVERY, INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 2018L10 ) |
| CAPITAL RAILROAD CONTRACTING, INC. | ) ) ) |
| Defendant. | ) |

## COMPLAINT FOR BREACH OF CONTRACT

NOW COMES the Plaintiff, Environmental Remediation and Recovery, Inc., by and through its attorney, Mark S. Johnson of Johnson, Schneider & Ferrell, L.L.C., and for its Complaint against the Defendant, Capital Railroad Contracting, Inc., states as follows:

1. That Plaintiff is an Illinois corporation with its principal offices in Pulaski County, IL.

2. That the Defendant is engaged in the business of securing all materials and providing their expertise and construction services for the installation of railroad facilities in the State of Illinois with offices in Columbia, Missouri.

3. That all of the events that give rise to this cause of action took place in Pulaski County, Illinois.

4. That on or about September 22, 2017 the Plaintiff and Defendant entered into a "Owner/Contractor Contract Agreement" drafted by the Defendant as more

fully appears from a copy of that contract which is attached hereto, marked Exhibit A and a made a part hereof.

5. That the contract between Plaintiff and Defendant required the Defendant to perform work for the Plaintiff on its facility in Mounds, Pulaski County, Illinois in accordance with the plans and specifications submitted by Plaintiff to Defendant as more fully appears from a copy of the engineering drawing of that project which is attached hereto, marked Exhibit B and made a part hereof.

6. That the contract between the Plaintiff and Defendant provided in pertinent part as follows:

> "14. It is expressly understood and agreed the parties hereto that time is and shall be the essence of the Contract of the part of said Contractor...
> 15. The Contractor knows that the Owner must have his/her Contract performed on or before the 31st day of December 31, 2017; and it is therefore understood and agreed that the work provided for herein shall be entirely completed on or before As Directed and to that end Contractor will perform his/her work as the Contractor directs that the progress of the job requires and/or permits. Extensions of time for strikes, fires or other casualties granted by the Owner shall result in an equivalent extension for Contractor."

7. That the Defendant breached his contract in one or more of the following respects:

    (a) Defendant failed to install the main switch in the correct position as required by the plan specifications;

    (b) Defendant did not properly construct the Plaintiff's north bay entrance so as to permit tank cars to fit within that facility;

    (c) Defendant constructed the radius of the turn of the rail tracks into Plaintiff's facility at a 19-20 degree radius instead of the 12 degree radius specified in the Plaintiff's specification agreed to by the Defendant;

2

(d) Defendant did not complete any of the above work within the time required by December 31, 2017.

8. That as a direct and proximate result of one or more of the foregoing breaches of the contract by the Defendant set forth in the foregoing paragraph the Plaintiff suffered damages that included loss of income; costs to complete and perform the contract in accordance with its terms.

9. The Plaintiff made demand upon the Defendant to fulfill the terms and conditions of its contract with the Plaintiff but as of the date of the filing of this Complaint Defendant has yet to remedy the aforementioned breaches of its contract with the Plaintiff.

WHEREFORE, the Plaintiff, Environmental Remediation and Recovery, Inc., prays for judgment against the Defendant for a sum in excess of the jurisdictional amount of this Court of $75,000.00 and for Plaintiff's cost of suit and for such other and further relief as this Court deems just and proper.

JOHNSON, SCHNEIDER & FERRELL, L.L.C.

/s/Mark S. Johnson
MARK S. JOHNSON

MARK S. JOHNSON
JOHNSON, SCHNEIDER & FERRELL, L.L.C.
212 North Main Street
Cape Girardeau, MO 63701
Telephone: 573-335-3300
Facsimile: 573-335-1978
mark@johnsonschneider.com

## VERIFICATION BY CERTIFICATION

The undersigned, pursuant to Section 1-109 of the Illinois Code of Civil Procedure, hereby certifies that the statements set forth in the foregoing pleading are true and correct, except as to matters therein stated to be on information and belief, and as to those matters the undersigned certifies that he/she verily believes the same to be true.

ENVIRONMENTAL REMEDIATION
AND RECOVERY, INC.

EDWARD DOSS, President

4

Job Name: Industrial Track Expansion

Job #: 10RR-DOSS

## Owner/Contractor CONTRACT AGREEMENT

This agreement made the 22nd day of September, 2017, by and between Capital Railroad Contracting Inc. hereinafter called the **Contractor**, and Edward Doss, Environmental Remediation and Recovery hereinafter called the **Owner**. For the consideration hereinafter named, the said **Contractor** covenants and agrees with the **Owner** as follows:

1. The **Contractor** will furnish all materials, labor and equipment, necessary to fully construct, perform and in every respect complete as soon as practicable after receipt of notice to proceed from **Owner** all the following described work at Environmental Remediation Recovery operations facility located in Mounds IL on property owned by (herein referred as "**Owner**"):
   Contractor shall supply all labor, material, equipment, and clean up necessary to furnish and install all according to the Plans and Specifications prepared by **OWNER**
   dated May 5th, 2017, and to the full satisfaction of said Owner, the architect, if any.

2. The **Contractor** has carefully examined the location of the project, is familiar with the existing conditions there, has carefully examined the Plans, Specifications, and Addenda No. NA covering the proposed project and the particular portion of the said project which **Contractor** proposes to undertake, and agrees to be bound thereby. Such Plans, Specifications and all subsequent Addenda thereto are hereby made a part of this agreement.

3. The **Owner** agrees to pay the **Contractor**, for the work described, the total price of three hundred eighty-nine seven hundred sixty-seven dollars ($389,767) see attached quotation No. QP-17-060-1 which is attached. All payments are subject to additions and deductions, in accordance with the provisions of this **Contract** and the other documents to which this **Contract** is subject.

4. The **Contractor** will promptly begin said work as soon as he is notified by the **Owner**, and will carry forward and complete said work as rapidly as **Owner** may judge that the progress of the work and other Sub-Contractors will permit. If **Contractor** deems itself delayed by other Sub-Contractors, Contractor will promptly notify **Owner** in writing, if satisfied that said delay is caused by others than said **Contractor** hereunder, will allow additional time sufficient in the judgment of the **Owner** to make up the time so lost. This paragraph shall cover any extra work done or materials furnished under this **Contract**.

5. The **Contractor** will furnish said materials, labor and equipment necessary to execute said work with due diligence, without delay, and will not in any manner, by delay or otherwise, interfere with the work of the **Owner**, or other Sub-Contractors, and should **Owner** conclude that **Contractor** is delaying said work, **Owner** shall so notify **Contractor** who shall, within 48 hours thereafter, furnish whatever materials are required by **Owner**, and employ additional personnel, if any, requested by **Owner**. If **Contractor** fails to comply with the foregoing, Contactor shall have the right to said materials and may employ additional personnel and charge the expense thereof against the said **Contractor** and deduct same from this **Contract**, and should the amount or balance due on said **Contract** be insufficient, **Contractor** shall pay said deficiency to **Owner** within ten days from demand.
   Contractor agrees that **Owner** shall have the right to terminate this Contract by giving Contractor 48 hours written notice after any of the following contingencies occur:

   (a) If **Contractor** becomes insolvent or if **Owner** has reason to believe that **Contractor** may become Insolvent


EXHIBIT A

      based upon the certification of an officer of a national banking corporation in the city in which the headquarters are located;

  (b) If Contractor refuses or neglects to supply sufficient, properly skilled workers and materials of the proper quality;

  (c) If Contractor fails in the performance of any of its obligations under this Contract; or,

  (d) If either Contractor or Owner, in Owner's judgment, shall become engaged in labor difficulties. And, Contractor agrees that in the event Owner elects to terminate this Contract, Owner may take possession of all materials, tools, appliances, and anything else which Contractor may have placed or have caused to be placed on the site of said project, and may engage any other person or persons to finish the Contract work.

6. Contractor represents that Contractor is an independent Owner and agrees to accept full and exclusive liability for the payment of any and all sales taxes, excise taxes, old age benefits, and unemployment compensation taxes upon the material and labor furnished under this Contract, as required by the Statutes of the United States Government and of the state in which this work is to be performed and, where applicable, of the County or local governing body under whose jurisdiction this work is to be performed.

7. The Contractor will provide sufficient, safe and proper facilities at all times for the inspection of the work by the Owner or architect, if any, or an authorized representative of the Owner or architect. He shall, at once, remove all materials and take down and rebuild all portions of the work condemned by the Owner or architect, if any, upon receiving notice in writing of such condemnation.

8. The Contractor shall not employ any workers whose employment on the project may be objected to by any of the other Contractors or employees of the Owner.

9. No extra work or changes under this Contract will be recognized or paid for, unless agreed to in writing before the work is done or the changes made; in which writing shall be specified in detail the extra work or changes desired, the price to be paid or the amount to be deducted.

10. Contractor hereby agrees to the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting there from, but only to the extent caused in whole or in part by negligent acts or omissions of the Owner, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claims, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this paragraph.

11. Contractor agrees to furnish Owner a certificate of insurance showing the coverages, limits and additional requirements as contained in Exhibit I - Insurance Requirements of this subcontract. Contractor further agrees that in the event one or more of such coverages are not furnished or evidenced properly, by a certificate of insurance, Owner may order sufficient required coverages, pay the cost of subject premiums plus fifteen percent (15%) and deduct said premiums from the amounts required to be paid to Contractor under this subcontract.

12. Contractor agrees to abide by all applicable Federal, State and Local Laws, ordinances, and regulations including but not limited to safety laws and regulations and to conform to the basic safety policy of the Owner in the performance of said Sub-Contract and to obtain all licenses, permits, etc., required in the performance of said Sub-Contract.

13. This Contract shall not be assigned by the Contractor in whole or in part without prior written consent of Owner. Any attempt to assign the Contract shall operate as an instant forfeiture and repudiation thereof by the Contractor and rights of the parties shall be determined in the same manner as though Contractor had at the time of such attempted assignment failed and refused to continue to perform the Contract. Contractor further agrees that in the event it is a partnership, the death of any partner, or if Contractor is an individual, his/her death shall be effective to terminate the Contract at the option of the Owner; provided Owner gives notice of its election to terminate the Contract within thirty (30) days from the date of death.

14. It is expressly understood and agreed by and between the parties hereto that time is and shall be the essence of the Contract of the part of said Contractor, and in the event said Contractor shall fail in the performance of the entire work to be performed under this Contract, by and at the time designated by Owner, Contractor shall be deemed to have abandoned its Contract and Owner may terminate such Contractor without further liability to Contractor. If Owner terminates this Contract, Contractor shall pay unto Owner, as and for liquidated damages, and not as penalty, the sum of $NA per day, which said sum, in view of the difficulty of estimating such damages with exactness, is hereby expressed, fixed, computed, determined and agreed upon as the damages hereinbefore mentioned are in lieu of the actual damages arising from such breach of this Contract, which said sum the said Owner shall have the right to deduct from any money otherwise due or to become due to Contractor, or to sue for and recover compensation or damages for the non-performance of this Contract at the time designated by Owner.

15. The Contractor knows that the Owner must have his/her Contract performed on or before the 31st day of December 31, 2017; and it is therefore understood and agreed that the work provided for herein shall be entirely completed on or before As Directed and to that end Contractor will perform his/her work as the Contractor directs that the progress of the job requires and/or permits. Extensions of time for strikes, fires or other casualties granted by the Owner shall result in an equivalent extension for Contractor.

16. The obligation to pay is subject to Contractor's first submitting an Application for Payment to Owner by the Twenty-Fifth (25th) day of each month for the value of work performed and materials under the Sub-Contract, less amount previously submitted. Pay requests will be paid on the 25th day of the following month or within five days of receipt of the monthly draw from Owner, whichever is later.

17. In order that Owner shall be liable to pay Contractor, Contractor will first supply Owner with a list of all those persons furnishing labor and/or materials to Contractor together with an itemized list of projected cost for each. Prior to receiving each progress payment, Contractor will provide Owner with proof of payment for the payment period requested from each of the above, at anytime, upon Owner's request. It is further understood and agreed that no payment on account shall operate as an approval of said work or

materials, or any part thereof.

All negotiations and agreements prior to the date of this memorandum and Contract are merged herein. We have read and fully understand this agreement.

The **Owner** and the **Contractor** for themselves, their successors, executors, administrators, heirs and assigns hereby agree to the full performance of the covenants of this agreement and further agree that they shall be bound by all of its terms and conditions. IN ACKNOWLEDGEMENT WHEREOF, the parties have caused this instrument to be executed effective the day and date written above.

SUBMIT CERTIFICATE OF INSURANCE WITH SIGNED CONTRACT.
AGREEMENT PRIOR TO FIRST PAY REQUEST

By: _____  *president / CEO*
Authorized Representative

Capital Railroad Contracting Inc.
CONTRACTOR

_____
President

By: _____
Authorized Representative

PLEASE PROVIDE FEDERAL ID # OR SS #

43-1449836

PLEASE PROVIDE PHONE & FAX NUMBERS

(618) 745-6562 office
(618) 521-1476 cell
(618) 745-6103 fax

EXHIBIT I. INSURANCE REQUIREMENTS

Contractor hereby agrees that at his/her own cost and expense, he/she shall have or procured prior to commencement of any work under this Sub-Contract, and shall maintain in full force and effect until all work has been completed and accepted, and shall require all Sub-Contractors likewise to procure and maintain, unless they be covered by Contractor's policies, insurance of the following kinds and minimum amounts; Insurance companies used to satisfy the insurance requirements of this contract shall maintain an "A", financial size V classification as published by A.M. Best Rating Guide.

1. **Workmen's Compensation Insurance** which fully meets the requirements of any Workmen's Compensation Law in force at the place where the work is to be performed. Employers Liability insurance shall be an amount no less than $500,000 Each Accident for Bodily Injury, $500,000 Policy Limit for Bodily Injury by Disease, and $500,000 Each Employee for Bodily Injury by Disease.

2. **Commercial General Liability** Contractor shall carry Commercial General Liability insurance on an "occurrence" form covering all operations by or on behalf of the Owner providing insurance for bodily injury liability, property damage liability and personal injury liability for the limits of liability indicated below and including coverage for:

    1. Premises and Operations
    2. Products and Completed Operations
    3. Owners and Contractors Protective
    4. Blanket Contractual Liability insuring the obligations assumed by the contractor under this agreement.
    5. Broad Form Property Damage (including completed operations)
    6. The Explosion, Collapse and Underground Hazards
    7. Cross Suits Liability
    8. Independent Contractors
    9. Delete any reference or restriction: to work performed within 50 feet of a railroad or railroad property, and affecting any railroad bridge or trestle, tracks, road-beds, tunnel underpass, or crossing; or that refers to any agreement which indemnifies a railroad.

The limits of liability shall not be less than:
- $ 1,000,000   Each Occurrence (combined single limit for Bodily Injury and Property Damage)
- $ 1,000,000   for Personal Injury Liability
- $ 2,000,000   Aggregate for Products – Completed Operations
- $ 2,000,000   General Aggregate

Except with respect to bodily injury and property damage included within the products and completed operations hazards, the aggregate limit shall apply separately to each project.

The above insurance must be maintained during the term of the Sub-Contractor's contract.

**Additional Insured/Waivers of Subrogation/Railroad Exclusion** The Contractor shall have the following endorsements added to their General Liability policy:

It is hereby agreed and understood that:

The Owner including directors, officers and employees thereof, are hereby added as Additional Insureds with respects to accidents, occurrences, claims and damages arising out of or resulting from the Work or Project. The coverage afforded the additional insureds under the policy shall be primary insurance. If the additional insured has other insurance which is applicable to the loss, such other insurance shall be on an excess, contingent and on non-contributory basis. The amount of the Contractor's liability under this policy shall not be reduced by the existence of such other insurance. The additional insured coverage endorsement shall include coverage for completed operations and contractual liability on an ongoing basis.

The statement: "There is no exclusion or restriction for work within 50 feet of a railroad, or for any agreement which indemnifies a railroad" shall be stated on the Contractor's certificate of insurance.

3. **Automobile Liability Insurance** (Bodily Injury and Property Damage Liability) including coverage for owned, hired and non-owned automobiles. The limits of liability shall not be less than $1,000,000 Combined Single Limit each accident for Bodily Injury and Property Damage combined.

4. **Excess Liability (Umbrella)** Excess Liability Coverage or Umbrella in excess of the Employer Liability, General Liability and Auto Liability Coverage with a limit of not less than $1,000,000 for each occurrence and in the per annum aggregate.

5. **Railroad Protective Liability** The Contractor shall obtain a policy of Railroad Protective Liability insurance naming the Railroad and Government Agency/Authority as named insureds. The policy shall provide limits of liability of $2,000,000 each occurrence and $6,000,000 in the aggregate..



# Capital Railroad Contracting

*"Driving safety and excellence home, one spike at a time"*

---

August 24, 2017                                   Quotation No. QP-17-060-1

Edward Doss                                       Project: Industrial Track Expansion
Environmental Remediation & Recovery
618-745-6562

**Project Overview**

Mobilize crew and equipment to Mounds, IL to install the proposed track expansion options below.

- Option A –                              $389,767.00
    - Survey and stake out track (not to exceed $5,000.00)
    - Install (2,570) TF of 110# jointed AREMA Class 2 relay rail. Toed relay joint bars and single shoulder tie plates will be installed on 6" Grade 3 crossties. All spikes and bolts will be new.
    - Install (4) No. 8 Reconditioned 110# Turnouts.
    - Install owner provided ballast, surface line and dress track with a Jackson 6700 (or comparable) and Kershaw Ballast Regulator.
- Option B –                              $152,898.00
    - Install (1,100) TF of 110# jointed AREMA Class 2 relay rail. Toed relay joint bars and single shoulder tie plates will be installed on Relay crossties. All spikes and bolts will be new.
    - Install (1) No. 8 Reconditioned 110# Turnouts.
    - Install (1) WCH Bumping post.
    - Install owner provided ballast, surface line and dress track with a Jackson 6700 (or comparable) and Kershaw Ballast Regulator.

**Note:**
This quote valid for 30 days; however, relay material is subject to prior sale. Option B is priced to be done in conjunction with Option A. This quote assumes (1) mobilization. The industrial track expansion proposed above is per the owner's request. All material and installation locations are per the owner's request.

Please don't hesitate to call or email with any questions or modifications.

Respectfully submitted,

Louis Fleischer
Northwest Division Manager

---

Capital Railroad Contracting – Kansas City/Northwest Division | 913-238-3231 | www.capitalrailroad.com
Corporate Office | 8500 E. Trade Center Dr., Columbia, MO 65201 | Office 573-474-3588 | Fax 573-474-3599



